[Cite as *State v. Jenkins*, 2023-Ohio-4758.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| ZABE JENKINS | : | Case No. 2023 CA 00004 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of Common
Pleas, Case No. 2007-CR-1903A


JUDGMENT:      Affirmed


DATE OF JUDGMENT:      December 26, 2023


APPEARANCES:

For Plaintiff-Appellee                                  For Defendant-Appellant

KYLE L. STONE                                          DONALD R. CASTER
PROSECUTING ATTORNEY                          P.O. Box 210040
                                                         Cincinnati, OH  45211-0040

Lisa A. Nemes
110 Central Plaza South, Suite 510

Canton, OH  44702
*King, J.*

{¶ 1}   Defendant-Appellant, Zabe John Jenkins, appeals the December 6, 2022 judgment entry of the Court of Common Pleas of Stark County, Ohio, denying his application for DNA testing.  Plaintiff-Appellee is the state of Ohio.  We affirm the trial court.

### FACTS AND PROCEDURAL HISTORY

{¶ 2}   On December 27, 2007, the Stark County Grand Jury indicted Jenkins (aka Boog) on one count of aggravated murder or aiding and abetting aggravated murder in violation of R.C. 2903.01, one count of aggravated robbery or aiding and abetting aggravated robbery in violation of R.C. 2911.01, one count of aggravated burglary or aiding and abetting aggravated burglary in violation of R.C. 2911.11, and one count of kidnapping or aiding and abetting kidnapping in violation of R.C. 2905.01.   The aggravated murder count carried death specifications which charged Jenkins with being the principal offender or having committed the murder with prior calculation and design while committing or attempting to commit aggravated robbery, aggravated burglary and kidnapping (R.C. 2929.04).  All four counts carried firearm specifications (R.C. 2941.145).

{¶ 3}   The indictment arose from an incident on June 20, 2007.  On that date, Jenkins, together with Elvis Wooten, Raymond Byrd, Michael Hall, and Latoya Rutledge, planned to rob a home for marijuana.  Jenkins and Wooten had previously purchased marijuana from this home.  Living at the home were two brothers, Steven Hight, Jr. and Antwon Hight, and their father, Steven Hight, Sr.  During the robbery, Steven Hight, Sr. was shot three times and killed.

{¶ 4} A jury trial commenced on July 14, 2008. Testimony from Byrd and Hall placed Jenkins at the scene carrying a 9 mm handgun. Hight, Sr. was shot with a 9 mm handgun. Shell casings recovered in the driveway where from a 9 mm weapon. Byrd and Hall received plea deals in exchange for their testimony. DNA testing on duct tape recovered from the scene excluded Jenkins as a contributor.

{¶ 5} The jury found Jenkins guilty of aggravated murder, aggravated robbery, aggravated burglary, and kidnapping along with the four firearm specifications. As for the death penalty specifications, the jury found Jenkins was neither the principal offender nor did he commit murder with prior calculation or design. By judgment entry filed July 31, 2008, the trial court sentenced Jenkins to an aggregate sentence of life imprisonment with the possibility of parole after forty-seven years.

{¶ 6} Jenkins's convictions and sentence were affirmed on appeal. *State v. Jenkins,* 5th Dist. Stark No. 2008 CA 00191, 2009-Ohio-6254.[1]

{¶ 7} On June 22, 2022, Jenkins filed an application for DNA testing. Jenkins sought DNA testing on several items including clothing removed from Hight, Sr., pieces of duct tape found in the home and removed from Hight, Sr., fingernail scrapings from Hight, Sr., and seven 9 mm shell casings recovered from the scene. Jenkins argued "additional testing and uploads of profiles could conclusively exclude him as the perpetrator and potentially identify the true perpetrators." By judgment entry filed December 6, 2022, the trial court denied the application, finding it did not meet the criteria under R.C. 2953.74. Specifically, Jenkins did not show the DNA testing would be "outcome determinative" in his case.

---

[1]A more detailed and comprehensive set of facts can be found in this opinion.

{¶ 8}   Jenkins filed an appeal with the following assignment of error:


I

{¶ 9}   "THE TRIAL COURT ERRED IN DENYING APPELLANT'S APPLICATION FOR POST-CONVICTION DNA TESTING."

I

{¶ 10} In his sole assignment of error, Jenkins claims the trial court erred in denying his application for DNA testing.  We disagree.

{¶ 11} R.C. 2953.74 governs prior tests and applications for postconviction DNA testing.  Under subsection (A), a trial court has discretion to accept or reject an application for DNA testing.  *See State v. Buehler,* 113 Ohio St.3d 114, 2007-Ohio-1246, 863 N.E.2d 124, syllabus.  Therefore, absent an abuse of discretion, we will not reverse the trial court's decision.   An abuse of discretion occurs when the trial court's decision is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 12} Pertinent to this appeal is subsection (C) which states the following:


(C) If an eligible offender submits an application for DNA testing under section 2953.73 of the Revised Code, the court may accept the application only if all of the following apply:

(1) The court determines pursuant to section 2953.75 of the Revised Code that biological material was collected from the crime scene or the victim of the offense for which the offender is an eligible offender and is

requesting the DNA testing and that the parent sample of that biological material against which a sample from the offender can be compared still exists at that point in time.

(2) The testing authority determines all of the following pursuant to section 2953.76 of the Revised Code regarding the parent sample of the biological material described in division (C)(1) of this section:

(a) The parent sample of the biological material so collected contains scientifically sufficient material to extract a test sample.

(b) The parent sample of the biological material so collected is not so minute or fragile as to risk destruction of the parent sample by the extraction described in division (C)(2)(a) of this section; provided that the court may determine in its discretion, on a case-by-case basis, that, even if the parent sample of the biological material so collected is so minute or fragile as to risk destruction of the parent sample by the extraction, the application should not be rejected solely on the basis of that risk.

(c) The parent sample of the biological material so collected has not degraded or been contaminated to the extent that it has become scientifically unsuitable for testing, and the parent sample otherwise has been preserved, and remains, in a condition that is scientifically suitable for testing.

(3) The court determines that, at the trial stage in the case in which the offender was convicted of the offense for which the offender is an

eligible offender and is requesting the DNA testing, the identity of the person who committed the offense was an issue.

(4) The court determines that one or more of the defense theories asserted by the offender at the trial stage in the case described in division (C)(3) of this section or in a retrial of that case in a court of this state was of such a nature that, if DNA testing is conducted and an exclusion result is obtained, the exclusion result will be outcome determinative.

(5) The court determines that, if DNA testing is conducted and an exclusion result is obtained, the results of the testing will be outcome determinative regarding that offender.

(6) The court determines pursuant to section 2953.76 of the Revised Code from the chain of custody of the parent sample of the biological material to be tested and of any test sample extracted from the parent sample, and from the totality of circumstances involved, that the parent sample and the extracted test sample are the same sample as collected and that there is no reason to believe that they have been out of state custody or have been tampered with or contaminated since they were collected.

{¶ 13} R.C. 2953.71(L) defines "outcome determinative" as follows:

"Outcome determinative" means that had the results of DNA testing of the subject offender been presented at the trial of the subject offender

requesting DNA testing and been found relevant and admissible with respect to the felony offense for which the offender is an eligible offender and is requesting the DNA testing, and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the offender's case as described in division (D) of section 2953.74 of the Revised Code, there is a strong probability that no reasonable factfinder would have found the offender guilty of that offense * * *.

{¶ 14} In its December 6, 2022 judgment entry denying Jenkins's application, the trial court analyzed each condition and concluded additional testing "would not produce a more favorable outcome or produce an outcome determinative result." The trial court noted the DNA testing on pieces of duct tape at trial excluded Jenkins as a contributor; if further testing excluded him from other items and established the presence of someone else's DNA, "such a result would not be outcome determinative with regard to Jenkins's guilt." The trial court determined: "additional testing would not negate the evidence of Jenkins's involvement in the crime and the jury's conclusion that he was an aider or abettor in the offenses."

{¶ 15} In his appellate brief at 12, Jenkins argues "the addition of exclusionary DNA evidence, or evidence linking an unknown suspect to the crime would lead no reasonable factfinder to find Mr. Jenkins guilty of this offense." Jenkins argues any DNA found on the spent shell casings which could exclude him, match someone else, or match a profile in CODIS would be outcome determinative. We hold otherwise.

{¶ 16} If it were the situation where Jenkins had been charged solely as the principal offender, then an argument could be made the absence of his DNA on the listed

items might be outcome determinative. But here the jury received the instruction that he could be convicted either as the principal or as an accessory. Under a complicity theory of his involvement, Jenkins would remain liable even if the testing showed the absence of his DNA. Moreover, if the items only showed the DNA of his codefendants, that would be consistent with much of the evidence presented at trial.

{¶ 17} For example, the evidence presented at trial placed a 9 mm firearm in Jenkins's hand prior to and during the incident. *State v. Jenkins,* 5th Dist. Stark No. 2008 CA 00191, 2009-Ohio-6254, ¶ 35 ("The evidence demonstrated that appellant carried a .9 millimeter handgun when they drove to the Hight home"). DNA evidence that someone else loaded the shell casings would not exonerate Jenkins from aiding and abetting the offenses.

{¶ 18} At trial, Jenkins argued there was no physical proof to connect him to the crime scene, he was not there, and claimed he was framed. Certainly, the absence of his DNA on the items would be consistent with that claim. But the task assigned to us by the legislature is more than whether the DNA evidence could be useful, rather we are confined to the consideration of whether the DNA results would be outcome determinative. The jury already received this argument and rejected it; instead, it chose to believe the eyewitness testimony regarding Jenkins's involvement prior to and during the crime. Further, DNA evidence confirming that those witnesses were indeed present and involved in the underlying crimes would not be inconsistent with the evidence and arguments made before the jury. Thus, additional DNA evidence excluding Jenkins from any of the items would not change the outcome.

{¶ 19} As noted by the Supreme Court in *State v. Scott,* 171 Ohio St.3d 651, 2022-Ohio-4277, 220 N.E.3d 668, ¶ 14, "the relevant question is whether there is a strong probability that no reasonable factfinder would have found Scott guilty of the offenses of assault, rape, and murder *if a DNA test result excluding Scott had been presented at trial and analyzed in the context of and upon consideration* of all available admissible evidence." (Emphasis *sic.*)  In the case sub judice, the trial court determined there was not a strong probability in Jenkins's case.  We cannot find the trial court abused its discretion in its decision.

{¶ 20} Upon review, we find the trial court did not abuse its discretion in denying Jenkins's application for DNA testing.

{¶ 21} The sole assignment of error is denied.

{¶ 22} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed

By King, J.

Delaney, P.J. and

Baldwin, J. concur.