[Cite as *State v. Clinton*, 2024-Ohio-1018.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                       :

      Plaintiff-Appellee,              :              No. 23AP-236
                                           (C.P.C. No. 10CR-7472)

v.                                                         :

                                              (ACCELERATED CALENDAR)

Marvin D. Clinton,                               :

      Defendant-Appellant.          :

---

D E C I S I O N

Rendered on March 19, 2024

---

**On brief:** [*Janet Grubb*, First Assistant Prosecuting Attorney], *Sheryl L. Prichard*, and *Mark R. Wilson*, for appellee.

**On brief:** *Marvin D. Clinton*, pro se.

---

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Defendant-appellant, Marvin D. Clinton, appeals from a judgment of the Franklin County Court of Common Pleas, denying his petition for postconviction relief. For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On August 2, 2013, the trial court convicted appellant, upon a jury verdict, of murder, tampering with evidence, and having a weapon while under disability. The judgment entry further states that a separate jury had previously determined appellant "failed to prove by a preponderance of the evidence that he is 'Not Guilty by Reason of Insanity.' " (Emphasis omitted.) (Aug. 2, 2013 Jgmt. Entry at 1.) The trial court sentenced appellant to a prison term of 31 years. Appellant timely filed a direct appeal to this court,

with the aid of court appointed counsel, who raised six assignments of error. Appellant also submitted two pro se assignments of error, including a claim of ineffective assistance of trial counsel. On November 18, 2014, this court affirmed appellant's conviction in *State v. Clinton*, 10th Dist. No. 13AP-751, 2014-Ohio-5099.

{¶ 3} In our decision in *Clinton*, we noted "[t]here is no dispute that someone shot and killed Kelsey Ray Ellis on December 18, 2010. Clinton denied being the shooter. The primary issue at the jury trial centered on the proof of the identity of the shooter and the jurors were convinced beyond a reasonable doubt that Clinton was the shooter." *Clinton* at ¶ 4. This court also discussed the evidence presented as follows:

> The evidence showed that in the early morning hours of December 18, 2010, Kelsey Ray Ellis's Cadillac Escalade collided with a two-toned green truck. The two drivers got out of their vehicles and a heated discussion occurred. The driver of the truck shot Ellis and then drove away. Marvin Clinton was arrested in a two-toned green truck later that morning. Clinton denied being involved in the shooting but the truck he was driving was clearly identified as being the truck which struck Ellis's Escalade, as proved by both an eyewitness and by analysis of the damage to the two vehicles.
>
> Gunshot residue testing indicated that Clinton had recently fired a gun. Testimony from witnesses in the neighborhood where the shooting occurred, testified about Clinton owning a firearm and showing it to them. Clinton even stated he was going to use the gun to rob a drug dealer who lived nearby.
>
> The green truck which Clinton was driving contained a magazine which was consistent with holding and firing ammunition such as the bullet and projectile which killed Ellis.
>
> The evidence, while not overwhelming, was sufficient to support the jury's conclusion that Clinton was the person driving the truck which was in a collision with * * * Ellis's Escalade. The evidence also indicated that the drivers got into a heated disagreement. Only one person was in the truck. Clinton was consistently the driver of the truck, despite not being the titled owner. Linking this testimony with the evidence that Clinton had recently fired a gun, as evidenced by gunshot residue testing, provided sufficient proof that Clinton had been the driver of the truck and that he shot Ellis after the argument.

There was little evidence that Clinton was not the shooter.

*Clinton* at ¶ 12-16.

{¶ 4} On August 19, 2014, while this appeal from his conviction was still pending, appellant filed a pro se petition for postconviction relief, pursuant to R.C. 2953.21, raising the following claims of ineffective assistance of trial counsel: (1) a failure to call witnesses; (2) electing to pursue an NGRI defense over appellant's objection; and (3) failing to submit cigarette butts found at the crime scene for DNA testing. Appellant's primary theory was that the victim was killed by other individuals who had reportedly fought with the victim earlier in the day. Appellant believed if DNA evidence on cigarette butts recovered at the scene of the shooting matched the victim's DNA, such evidence would call into question the sequence of events alleged by the state. Appellant argued the DNA evidence might also match one of the other known suspects who had fought with the victim and had a motive to harm him. If so, appellant argues his trial counsel provided deficient performance by failing to properly investigate his case for trial.

{¶ 5} On June 5, 2015, the trial court appointed counsel for appellant. While appellant's motion was pending, appellant simultaneously pursued habeas corpus relief in federal court. The federal litigation resulted in significant delay.[1]

{¶ 6} On December 29, 2015, defendant filed a "motion for appropriation of funds for investigator and DNA testing and for extension of time to file supplemental memorandum in support of post-conviction petition." On March 24, 2016, the trial court granted appellant's motion for funding and appropriated $1,500 for DNA testing, plus reasonable expenses for an investigator. On May 17, 2016, the trial court authorized an additional $3,500 for appellant to hire a DNA expert. Proceedings on the motion for funding, efforts by appellant to expand testing, and the actual testing process resulted in significant delay.

{¶ 7} On November 1, 2018, appellant moved the trial court for additional DNA testing of swabs from blood collected from the driver's side doors of the victim's vehicle.

---

[1] According to plaintiff-appellee, State of Ohio, appellant raised essentially the same arguments he raised in his petition for postconviction relief. A federal magistrate considered and rejected appellant's claims. A federal district judge approved the magistrate's decision and denied a certificate of appealability.

Appellant's theory was that the blood or fingerprint lifts found in the victim's vehicle may belong to one of the suspects who had fought with the victim earlier in the day. The state opposed the motion, arguing there is no indication that the items appellant seeks to examine exist. On October 21, 2019, the trial court denied the motion, concluding:

> [H]aving reviewed the arguments of counsel and the record, and after full and careful consideration, finds Defendant has failed to meet the initial burden of establishing the reasonableness of his request. The exhibits attached to Defendant's motion are insufficient evidence on which this Court can base a decision to authorize the expenditure of state funds for DNA testing. While the Hold for Prints and Progress of Investigation reports identify latent lifts taken from the vehicle and the existence of blood on the victim's vehicle, there is nothing before the Court to suggest that swabs were collected or that the fingerprints were in blood. Accordingly, the Court will not authorize the expenditure of funds to test that which does not appear to exist.

(Oct. 21, 2019 Decision & Entry at 2.)

{¶ 8} On May 19, 2020, the trial court issued the following "Entry for DNA Testing" related to the cigarette butts:

> Pursuant to this Court's previous order granting funding for DNA testing of cigarette butts found at the scene of the victim Kelsey Ray Ellis' vehicle (marked as State's Ex. D-9 at trial), the Court hereby ORDERS the Prosecuting Attorney to ship the cigarette butts to the lab chosen by the defense, DNA Diagnostics Center in Fairfield, Ohio, for DNA testing. The Prosecuting Attorney shall ship the cigarette butts via FedEx or UPS pursuant to the "Evidence Packaging & Shipping Instructions" provided by that lab.

(May 19, 2020 Entry for DNA Testing at 1.)

{¶ 9} On October 14, 2020, appellant submitted a supplemental pro se pleading in support of his motion. On February 1, 2021, appellant's appointed counsel filed a motion for extraordinary fees. An invoice from DNA Diagnostics Center was submitted to the court in connection with the motion for extraordinary fees. The invoice shows a balance of $3,015 for the following: "STR Analysis of Evidence or Reference (Known) Sample DNA analysis of evidence items (cigarette butts, Ex. D-9 Marlboro brand) and reference standard/FTA Card (I-Spot) - Kelsey Ray Ellis[.] Plus $30.00 shipping charges." (Feb. 1, 2021 Mot. for

Extraordinary Fees, Invoice at 1.) No DNA results were submitted to the trial court and no further briefing occurred.

{¶ 10} On March 27, 2023, the trial court denied defendant's postconviction petition without a hearing. The trial court concluded that appellant "has not submitted evidence containing sufficient operative facts to demonstrate the lack of competent counsel and that defendant was prejudiced by counsel's ineffectiveness such that a hearing is required." (Mar. 27, 2023 Decision & Entry at 3.) In so concluding, the trial court noted that it "authorized funds for an investigator, DNA testing related to cigarette butts * * * [but] [n]o DNA results from the cigarette butts were submitted with defendant's supplemental briefing. Accordingly, the Court presumes they were not exculpatory." (Mar. 27, 2023 Decision & Entry at 3.)

{¶ 11} Appellant timely appealed to this court from the March 27, 2023 judgment.

## II. ASSIGNMENTS OF ERROR

{¶ 12} Appellant assigns the following as trial court errors:

> [1.] The trial court abused its discretion when it failed to Order the State to complete an inventory list of available DNA Evidence to provide Appellant's counsel as required by RC. §2953.75 thereby violating Appellant's Sixth and Fourteenth Amendment Rights to Procedural Due Process.

> [2.] Post-conviction counsel provided ineffective assistance of counsel when he failed entirely to subject the prosecution's DNA evidence to meaningful adversarial testing and abandoning Appellant claims.

(Sic passim.)

## III. STANDARD OF REVIEW

{¶ 13} The Supreme Court of Ohio has held that the abuse of discretion is the proper standard for reviewing a trial court's ruling on a petition for postconviction relief. *State v. Weaver*, 171 Ohio St.3d 429, 2022-Ohio-4371, ¶ 24, citing *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 58. The Supreme Court explained that the term "abuse of discretion" connotes that " ' "the court's attitude is unreasonable, arbitrary or unconscionable." ' " *Id.*, quoting *Gondor* at ¶ 60, quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). The *Weaver* court stated that "an abuse-of-discretion standard is especially

appropriate in cases in which a petition for postconviction relief is based on a claim of ineffective assistance of counsel." *Id.* at ¶ 25, citing *Gondor* at ¶ 53-56.

## IV. LEGAL ANALYSIS

### A. Appellant's First Assignment of Error

{¶ 14} In appellant's first assignment of error, appellant contends the trial court abused its discretion when it failed to comply with R.C. 2953.75 in connection with appellant's request for DNA testing. We disagree.

{¶ 15} Even though appellant never expressly invoked R.C. 2953.71 et seq., in his petition for postconviction relief, the Supreme Court has stated that "the specter of a wrongful conviction in light of available but untested DNA evidence is something the legislature has sought to prevent by making postconviction testing available." *State v. Scott*, 171 Ohio St.3d 651, 2022-Ohio-4277, ¶ 22.

{¶ 16} The statutory scheme permits eligible offenders to apply for postconviction DNA testing as described in R.C. 2953.71 through 2953.81. *Scott* at ¶ 6, citing R.C. 2953.73. The circumstances under which a trial court may accept an application for postconviction DNA testing are described in R.C. 2953.74. *Id.* R.C. 2953.74(B)(1), provides that the court may accept the application only if:

> *The offender did not have a DNA test taken at the trial stage* in the case in which the offender was convicted of the offense for which the offender is an eligible offender and is requesting the DNA testing regarding the same biological evidence that the offender seeks to have tested, the offender shows that DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the subject offender's case as described in division (D) of [R.C. 2953.74] would have been outcome determinative at that trial stage in that case, *and, at the time of the trial stage in that case, DNA testing was not generally accepted, the results of DNA testing were not generally admissible in evidence, or was not yet available.*

(Emphasis added.)

{¶ 17} There is no contention that DNA evidence was either not generally accepted, not generally admissible in evidence, or not yet available in 2013 when appellant was tried and convicted. Moreover, R.C. 2953.74(C) describes the conditions the offender must satisfy before the trial court may accept the offender's application for postconviction DNA

testing, including the requirement that an "*exclusion result*" would be "*outcome determinative*" regarding the offender. (Emphasis added.) *See* R.C. 2953.74(C)(4) and (5). The term "exclusion result" means a DNA test result "that scientifically precludes or forecloses the subject offender as a contributor of biological material recovered from the crime scene or victim in question." R.C. 2953.71(G). DNA is "outcome determinative" if "there is a strong probability that no reasonable factfinder would have found the offender guilty of [the] offense" for which he or she was convicted if the DNA results had been presented and found relevant and admissible at trial and "had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the offender's case." R.C. 2953.71(L).

{¶ 18} Under the theory raised in appellant's petition, the DNA test results appellant seeks are not *outcome determinative*. Appellant was not convicted based on the presence of his DNA at the crime scene. If the DNA of another individual had been recovered from cigarette butts found at the scene of the vehicle collision and shooting, that evidence would not necessarily exclude appellant as the assailant. At best, that evidence would lead to the possibility of another shooter. In other words, while the absence of appellant's DNA on the cigarette butts excludes appellant as the person who smoked a cigarette at the crime scene on or about the time the crime occurred, it does not mean appellant was not at the crime scene when the shooting occurred or that he could not have been the shooter. Indeed, other evidence admitted at trial placed appellant at the scene of the vehicle collision and shooting.

{¶ 19} Based on the foregoing, even if appellant's petition had explicitly invoked R.C. 2953.71 et seq., those statutory provisions did not authorize the trial court to provide him the relief he sought. Accordingly, we overrule appellant's first assignment of error.

### B. Appellant's Second Assignment of Error

{¶ 20} In appellant's second assignment of error, he alleges that his counsel provided ineffective assistance in proceedings on his petition. More particularly, appellant claims that his postconviction counsel failed to convince the trial court to submit all available DNA evidence for testing, and subsequently abandoned his petition without submitting the DNA results.

{¶ 21} R.C. 2953.21(J)(2) provides in relevant part that "[t]he ineffectiveness or incompetence of counsel during proceedings under this section *does not constitute*

*grounds for relief* in a proceeding under this section, *in an appeal of any action under this section*, or in an application to reopen a direct appeal." (Emphasis added.) Under R.C. 2953.21(J)(2), appellant's second assignment of error does not constitute grounds for relief on appeal from the trial court's judgment in this case. *State v. Waddy*, 10th Dist. No. 15AP-397, 2016-Ohio-4911, ¶ 44.

{¶ 22} Appellant's second assignment of error is overruled.

## V. CONCLUSION

{¶ 23} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BEATTY BLUNT and EDELSTEIN, JJ., concur.

_____