OPINION
{¶ 1} Abraham Isa appeals from his conviction in the Champaign County Common Pleas Court of thirteen counts of gross sexual imposition and two counts of rape. Isa's convictions resulted from the testimony of five young women, two of *Page 2 
whom were minors.
 {¶ 2} These young women were employees of Isa at a Sunoco station Subway shop and at the St. Paris Grill in St. Paris, Ohio. The investigation into these crimes began when C.L. reported to the St. Paris police that her daughter, C., had told her that one of her friends who worked for Isa complained that Isa had inappropriately touched her body while she was at work. An investigation by the St. Paris police, the Champaign County Sheriff, and Children's Services led to Isa's indictment.
 {¶ 3} At trial, Officer Anthony Risley of the St. Paris Police testified without objection that he interviewed several young women who all told him that they had been inappropriately touched by Isa. (Tr. 175.) Most of the young women were between the ages of fifteen and eighteen years of age. On cross-examination, Isa's counsel questioned Risley at length about the particulars of the young women's accusations. Risley told defense counsel the girls said Isa grabbed their breasts and put his hands down their pants. One girl indicated Isa used his finger to penetrate her vagina.
 {¶ 4} Detective Karen Gould of the Champaign County Sheriff's Office testified she was present when Amber Spence of Children's Services interviewed the young women who were allegedly victims of inappropriate sexual conduct by Isa. She and Spence both testified generally about the victims' accusations without objection by Isa's counsel.
 {¶ 5} Each of the alleged victims testified at trial. They all testified that Isa inappropriately touched their breasts and their buttocks and put his hands down their pants. Two of the victims testified Isa placed his finger in their vaginas. Some *Page 3 
of them testified Isa exposed his penis to them and forced them to touch his penis.
 {¶ 6} In his first assignment, Isa contends the trial court erred in not granting him a mistrial.
 {¶ 7} During cross-examination of Isa the assistant prosecutor asked Isa if he had lived previously in Indiana. When Isa replied he had not, the prosecutor asked if he had ever spent time in Indiana. Isa responded as follows: "Indiana I buy a 60-acre land. If you want to know about it, I be glad to tell you. I built a home on it, and I had one guy work for me there. * * * I buy it from Indiana. It's about 40 mile from Cincinnati, and I used to live in Cincinnati, and my business is in Cincinnati and I buy 60 acre land, and I start building home. Nice. Build a nice house for my kids, farm. I live in the country when I was a little boy. I like country. And one guy worked for me, he steal. He come and steal tools and everything. And he tell me what's happen, and I fire the guy. After two weeks he came, he burned the house. He burned my house down completely. I lost it. I don't have no insurance. I don't have nothing. I lost everything. And I have a good lawyer, make me sign a paper. I don't speak English. I don't read nothing. My son has died, ten years old, and he died. And the lawyer, he said, Abe, sign here, just with your initials and everything you just said, say yes, and he told me what to say. I said no. I knew when I signed by life on it. I don't know nothing about it. And I, I plead guilty for it. I don't know much . . ." (Tr. 478-479.)
 {¶ 8} Appellant's trial counsel moved for a mistrial, accusing the prosecutor of deliberately eliciting the answer. The court questioned the assistant prosecutor about her motives. She responded that she did not expect Isa's answer and she assumed defense counsel would have told his client not to mention the conviction in *Page 4 
Indiana. (Tr. 480-481.)
 {¶ 9} The trial court denied Isa's motion for a mistrial and instructed the jury to disregard Isa's answer to the prosecutor's question. The court instructed Isa to answer simply the question asked, i.e., whether he ever lived in Indiana. Isa answered that he never lived in Indiana. (Tr. 481.)
 {¶ 10} The record discloses that Isa initially was tried on the same charges a few weeks earlier and the trial court granted Isa's motion for a mistrial when the State's witness, Karen Gould, during direct examination, stated that Isa was convicted in Indiana in 1986 of arson for hire pursuant to his guilty plea. Counsel objected to this testimony because the conviction was over ten years old and because it was pursuant to a guilty plea. (Tr. 157 of November 5, 2007 trial.)
 {¶ 11} Isa claims the prosecutor asked the question for the specific purpose of eliciting an admission by him that he had a prior conviction. The State argues that it had a more benign reason for asking the question, that Isa had recently moved to St. Paris. In any event, the State argues that Isa's answer was unresponsive and volunteered. The State also notes that the jury was not informed of the offense to which Isa pleaded guilty. We agree that the defendant's answer was volunteered and was unresponsive to the prosecutor's question.
 {¶ 12} The decision to declare a mistrial is within the discretion of the trial court and its decision should be granted deference and affirmed by a reviewing court in the absence of an abuse of discretion.State v. Glover (1988), 35 Ohio St.3d 18, 19; State v. Sage (1987),31 Ohio St.3d 173; State v. Long (1978), 53 Ohio St.2d 91, 98. An "abuse of discretion" means more than a mere error of law or judgment; it means the trial court was unreasonable, arbitrary or unconscionable. *Page 5 State v. Lowe, 69 Ohio St.3d 527, 532, 1994-Ohio-345, quoting State v.Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 13} In the defendant's first trial, the State elicited evidence of defendant's prior felony conviction in its case-in-chief. This is ordinarily improper. For the purposes of attacking the credibility of the accused if he takes the stand, evidence that he has been convicted of a felony is admissible. Evid. R. 609(A)(2). Normally, that evidence is not admissible if a period of ten years has elapsed since the accused was released from confinement, probation, or parole. This record does not reflect when Isa was released from confinement, probation, or parole in Indiana. In any event, the Supreme Court has been most reluctant to second guess a trial court's decision not to grant a mistrial. InState v. Holt (1969), 17 Ohio St.2d 81, the court refused to reverse a trial court's decision to deny a mistrial when an officer testified that the defendant failed a polygraph. We find no abuse present in the trial court's denial of defendant's mistrial motion. The first assignment of error is Overruled.
 {¶ 14} In his second assignment, Isa claims his trial counsel was constitutionally ineffective for not objecting to Officer Risley and Karen Gould's testimony that the young women told them that Isa had sexually abused them. Isa contends his counsel could not have had any trial strategy that would justify permitting the hearsay testimony to be presented. The State argues that Isa's counsel may not have objected because the victims were listed as State's witnesses and were going to testify anyway. Besides, the State argues counsel may have been trying to establish inconsistency between what the victims told the police and what they would tell the jury when they testified. *Page 6 
 {¶ 15} To prevail on a claim of ineffective assistance of counsel, an appellant must meet the heavy burden of showing that counsel "made errors so serious that counsel was not functioning as `counsel' guaranteed the defendant by the Sixth Amendment." Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 2071; State v.Nabozny (1978), 54 Ohio St.2d 195, vacated in part on other grounds,Nabozny v. Ohio (1978), 439 U.S. 811. An appellant must show that, but for the ineffective assistance, the result of the trial probably would have been different and, therefore, the result is unreliable.Strickland, at 2071.
 {¶ 16} If the defendant cannot show prejudice caused by his counsel's actions or omissions, a reviewing court need not consider counsel's performance at all. Id., at 2072. The Confrontation Clause does not bar admission of out-of-court statements where the defendant has the benefit of full and effective cross-examination of the declarant at the trial.California v. Green (1970), 399 U.S. 149, 157-164, 90 S.Ct. 1930,1934-38. All of the witnesses who gave hearsay statements to the police testified at Isa's trial and were cross-examined by Isa's counsel. Isa was therefore not prejudiced by his counsel's not objecting to the hearsay testimony presented. See also State v. Keenan,81 Ohio St.3d 133, 142, 1998-Ohio-459.
 {¶ 17} Isa also contends his trial counsel was ineffective for failing to object to certain leading questions of the alleged victims. Isa refers us to the prosecution's questioning of one of the juvenile witnesses at page 242 of the transcript.
 {¶ 18} "Q. And when you were left alone with him what happened?
 {¶ 19} "A. He would get real close and whisper in my ear, and sometimes he'd nibble *Page 7 
 {¶ 20} on it or kiss on my cheek.
 {¶ 21} "Q. Anything else?
 {¶ 22} "A. He backed me up against the wall a couple times.
 {¶ 23} "Q. Did he ever touch you?
 {¶ 24} "A. Yeah.
 {¶ 25} "Q. Where did he touch you?
 {¶ 26} "A. My breast. Right above like my pant line.
 {¶ 27} "Q. So would he actually put his hands down the top of your pants?
 {¶ 28} "A. Yeah, to a point.
 {¶ 29} "Q. But was he touching bare skin?
 {¶ 30} "A. Yes.
 {¶ 31} "Q. In the front or the back?
 {¶ 32} "A. Both.
 {¶ 33} "Q. So he would touch the top of your bare buttocks?
 {¶ 34} "A. Yes.
 {¶ 35} "Q. And he would touch the top of your bare pelvic area?
 {¶ 36} "A. Yes."
 {¶ 37} Isa also contends leading questions were permitted by his counsel of another victim at pages 301 and 302 of the record. The following testimony was presented at that portion of the record:
 {¶ 38} "Q. Now, that's two incidents. Were there other things that happened?
 {¶ 39} "A. Yes. It was the same day where he put his hands in my pants at Sunoco. *Page 8 
 {¶ 40} I said I had to go to the bathroom, and he said — I said I was going to go use the Sunoco bathroom just the regular Sunoco bathroom. He said, `No, use mine in my office.' So I walked into the bathroom, I turned around, and he said — I was going to shut the door, and he said, `No, leave the door open.' And I said, `I don't have to go anymore.' So I walked out. And then he said — we sat down and we started talking some more about if I go to orgy parties, and I said no. Then he told me about some lady — the whole conversation about some lady that he used to know or something that doesn't have anything to do with this, but that's just what we talked about. And then he was telling me that once you hang with somebody that's not good, as in wealthiness with money, you won't be a good person.
 {¶ 41} "Q. I need you to say that again. I didn't hear you.
 {¶ 42} "A. If you hang around with bums, you're always going to be a bum. That's what he said.
 {¶ 43} "Q. And what do you think he meant by that?
 {¶ 44} "A. I don't know.
 {¶ 45} "Q. Did it have something to do with money?
 {¶ 46} "A. I have no idea why he said it.
 {¶ 47} "Q. Did he think that you were hanging out with people you shouldn't be hanging
 {¶ 48} out with?
 {¶ 49} "A. I think so.
 {¶ 50} "Q. Did he want you [to] hang out with him?
 {¶ 51} "A. I was hanging out with Abe.
 {¶ 52} "Q. Did he want you to continue to hang out with him? *Page 9 
 {¶ 53} "A. Yeah. He would call me all the time.
 {¶ 54} "Q. [D.], did he ever make you touch him?
 {¶ 55} "A. Yes.
 {¶ 56} "Q. Tell us about that.
 {¶ 57} "A. The same night he got in my pants at Subway he told me to go into the back
 {¶ 58} office where the cameras were and to pull down my pants and turn around. So I was afraid, so I did it. So then —
 {¶ 59} "Q. Did the cameras work?
 {¶ 60} "A. He said they didn't work.
 {¶ 61} "Q. Okay. So what happened?
 {¶ 62} "A. But I could still see it on t.v. in the back office. So my boyfriend at the time,
 {¶ 63} [S.], kept coming up to Sunoco checking in on me and stuff, and Abe said, `Just tell him not to come until 12:00.' So after I got off at 12:00 we went outside. Abe and I went outside, and we walked around Subway `cause he said we was going to go for a walk. So we walked around Subway."
 {¶ 64} The State argues that had counsel objected to the prosecutor's leading questions, the trial court would probably have overruled the objection. The State notes that examining minors about sexual assaults is one of the classic examples where leading questions are permitted. In any event, the State argues the prosecutor's questions were merely summations or clarifications of previous answers of the two witnesses' testimony.
 {¶ 65} We agree that some of the questioning by the prosecutor was leading, *Page 10 
but we fail to see how the outcome of the proceedings was affected by these questions. The Appellant's second assignment is likewise Overruled.
 {¶ 66} The Judgment of the trial court is Affirmed.
WOLFF. P.J., and DONOVAN, J., concur.
Copies mailed to:
Nick A. Selvaggio
Joyce Anderson
Samuel L. Huffman
 Hon. Roger B. Wilson *Page 1