**[Cite as *State v. Isa*, 2024-Ohio-980.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-28 |
| | : | |
| v. | : | Trial Court Case No. 2007 CR 207 |
| | : | |
| ABRAHAM ISA | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 15, 2024

. . . . . . . . . . .

ABRAHAM ISA, Appellant, Pro Se

JANE A. NAPIER, Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Abraham Isa, appeals pro se from a judgment denying his application for DNA testing, his motion for leave to file a delayed motion for a new trial, and his request for documents under the Ohio Public Records Act.   Isa does not present specific assignments of error but appears to be asserting prosecutorial misconduct at trial and ineffective assistance of trial counsel.   For the reasons discussed below, Isa's

arguments are without merit. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 2} As a preliminary point, this is the eleventh appeal Isa has made to this court concerning his 2007 conviction. He has also unsuccessfully filed habeas petitions in federal court and in the Supreme Court of Ohio. The history of his many filings is complex due to its volume.

{¶ 3} In November 2008, we affirmed on direct appeal Isa's conviction on thirteen counts of gross sexual imposition and two counts of rape. *State v. Isa*, 2d Dist. Champaign No. 07-CA-37, 2008-Ohio-5906, ¶ 1-66 (*Isa I*). The five sexual assault victims in that case had been employed at a Sunoco station and subway shop that Isa owned and some victims were minors. *Id.* at ¶ 1-2. At trial, the victims testified that Isa had "inappropriately touched their breasts and their buttocks and put his hands down their pants. Two of the victims testified Isa placed his finger in their vaginas. Some of them testified Isa exposed his penis to them and forced them to touch his penis." *Id.* at ¶ 5.

{¶ 4} On direct appeal, Isa raised two assignments of error: (1) the trial court erred in failing to declare a mistrial due to prosecutorial misconduct in asking about Isa's prior conviction; and (2) Isa received ineffective assistance of trial counsel. We rejected both assignments of error. *Id.* at ¶ 13 and 65. Isa then appealed from our decision to the Supreme Court of Ohio, which refused to accept the appeal. *See State v. Isa*, 121 Ohio St.3d 1440, 2009-Ohio-1638, 903 N.E.2d 1223.

{¶ 5} In August 2010, we affirmed two post-trial orders by the trial court: (1) the

denial of Isa's motion for resentencing, which had alleged the sentencing entry failed to provide for post-release control; and (2) the denial of Isa's motion to correct his 24.5-year prison sentence to 23 years. *See State v. Isa*, 2d Dist. Champaign Nos. 10-CA-1 and 10-CA-2, 2010-Ohio-3770, ¶ 1-38 (*Isa II and III*). As indicated, the two appeals were considered together. We concluded that post-release control, in fact, was in the sentencing entry and had been discussed during sentencing. *Id.* at ¶ 10-12. In addition, we found the trial court had not abused its discretion in overruling the motion to correct the sentence. *Id.* at ¶ 36. The Supreme Court of Ohio again declined review. *See State v. Isa*, 127 Ohio St.3d 1485, 2010-Ohio-6371, 939 N.E.2d 183.

{¶ 6} In December 2011, Isa filed a habeas petition in federal district court, and that petition was dismissed in January 2012. *See Isa v. Warden, Chillicothe Corr. Inst.*, S.D.Ohio No. 3:11-CV-461, 2012 WL 214316, *1 (Jan. 24, 2012) (dismissing habeas petition and denying leave for any certificate of appealability). In this particular habeas action, Isa had asserted ineffective assistance of trial and appellate counsel and the trial court's failure to follow evidentiary rules. *Isa v. Robinson*, S.D.Ohio No. 3:11-CV-461, 2012 WL 10286, *1-2 (Jan 3, 2012) (magistrate's decision recommending dismissal).

{¶ 7} Isa then filed a second habeas petition in federal district court in July 2012; the court dismissed the petition in August 2012, based on expiration of the statute of limitations. *See Isa v. Robinson*, S.D.Ohio No. 3:12-CV-249, 2012 WL 3063896, *2 (July 2, 2012) (magistrate's decision recommending dismissal with prejudice); *Isa v. Warden, Chillicothe Corr. Inst.*, S.D.Ohio No. 3:12-CV-249, 2012 WL 3528159, *1 (Aug. 14, 2012) (adopting magistrate's decision and dismissing habeas petition).

**{¶ 8}** In September 2012, Isa filed a pro se motion in the trial court seeking to vacate his conviction as contrary to law.   *See State v. Isa*, 2d Dist. Champaign No. 2012-CA-44, 2013-Ohio-3382, ¶ 1 (*Isa IV*).   Despite the styling of the caption of the motion and its first page, we concluded that Isa was actually asserting ineffective assistance of trial counsel based on counsel's alleged advice to reject a plea bargain and counsel's alleged failure to advise Isa of the deportation consequences.   *Id.* at ¶ 3 and 5.   The trial court dismissed the matter as an untimely post-conviction petition, and we affirmed.   *Id.* at ¶ 3 and 10.   Our decision affirming the trial court judgment was issued on August 2, 2013. No appeal was taken from this decision.

**{¶ 9}** While the appeal of that post-conviction motion was pending, Isa had filed a March 13, 2013 motion in the trial court seeking leave to file a motion for new trial.   This motion was based on alleged newly discovered evidence that Isa's sons had committed the crimes or had caused the victims to testify against Isa.   *State v. Isa*, 2d Dist. Champaign No. 2013-CA-20, 2014-Ohio-139, ¶ 4 (*Isa V*).   We agreed with the trial court that Isa had failed to present clear and convincing evidence that he could not have timely discovered the alleged evidence or the grounds for his untimely motion.   *Id.* at ¶ 12-13. Our opinion was issued on January 17, 2014.   Isa appealed from this decision as well, but the Supreme Court of Ohio denied appeal on May 14, 2014.   *State v. Isa*, 138 Ohio St.3d 1492, 2014-Ohio-2021, 8 N.E.3d 962 (denying motion for delayed appeal).

**{¶ 10}** Isa filed three additional motions in the trial court in 2013 but did not appeal from the trial court's denial of these motions.   *See State v. Isa*, 2d Dist. Champaign No. 2014-CA-31, 2015-Ohio-2876, ¶ 5 (*Isa VI*).

{¶ 11} On May 28, 2014, Isa filed a pro se habeas petition in the Supreme Court of Ohio. The court dismissed the petition sua sponte on September 14, 2014. *See Isa v. Robinson*, 140 Ohio St.3d 1434, 2014-Ohio-4160, 16 N.E.3d 678.

{¶ 12} While the habeas case was pending in the Supreme Court of Ohio, Isa filed yet another motion in the trial court. This time, Isa moved for resentencing, claiming the trial court made various statutory errors that caused the sentence to be void in part. *Isa VI* at ¶ 6. We agreed with the trial court that even if the court had failed to notify Isa that he could be ordered to perform community service in lieu of paying court costs, that did not render the sentence void. The claim was also barred by res judicata because Isa had not raised the matter on direct appeal. *Id.* at ¶ 9-15. Our opinion affirming the trial court judgment was issued on July 17, 2015. Isa did not appeal from this decision to the Supreme Court of Ohio.

{¶ 13} Shortly thereafter, on August 10, 2015, Isa again filed a pro se motion for new trial. This time, Isa asserted he had recently discovered additional evidence showing that his sons had committed the offenses and had manipulated the victims to testify against him. *See State v. Isa*, 2d Dist. Champaign No. 2015-CA-35, 2016-Ohio-4979, ¶ 7 (*Isa VII*). Isa also again raised trial counsel's alleged ineffectiveness concerning the plea offer and also claimed counsel had acted ineffectively by failing to obtain an Arabic interpreter for trial. *Id.* We concluded the ineffective assistance claim was barred by res judicata because the language barrier issue did not rely on evidence outside the record. This claim was also untimely because Isa failed to show he had unavoidably been prevented from discovering the pertinent facts. *Id.* at ¶ 15-17.

**{¶ 14}** As to the discovery of new evidence, this claim was based on affidavits Isa had obtained from two former male employees who were by then fellow-inmates.   *Id.* at ¶ 8.   In this regard, we noted: Isa had employed the men before he was indicted; the men had been aware of the charges; Isa had given his attorney one of the men's names before trial; and that man's affidavit indicated he had expected to be called as a witness at trial.   *Id.* at ¶ 25.   We also stressed that even though Isa was incarcerated, his affidavit did not "account for the nine years it took to come into contact with" these witnesses.   *Id.* Furthermore, while Isa was incarcerated, he "was not prevented from attempting to contact these witnesses himself or through a representative."   *Id.*   We therefore affirmed the trial court's judgment on July 15, 2016.   Isa did not appeal this decision to the Supreme Court of Ohio.

**{¶ 15}** Also on July 15, 2016, we issued another opinion affirming the trial court's denial of Isa's pro se motion to correct a void judgment, which Isa had filed on September 15, 2015.   *State v. Isa*, 2d Dist. Champaign No. 2015-CA-44, 2016-Ohio-4980, ¶ 1 (*Isa VIII*).   While Isa's pro se brief failed to assert assignments of error, we surmised that he was "challenging his sentence on grounds that it violated the prohibition against sentence packaging as announced in *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824."   *Id.* at ¶ 7.   We found the claim barred by res judicata and also held that, even if we considered it on the merits, Isa's sentence did not violate this doctrine.   *Id.* at ¶ 9-12.   No appeal was taken from this decision to the Supreme Court of Ohio.

**{¶ 16}** On December 29, 2016, Isa filed a pro se motion in the trial court seeking to vacate a void judgment.   This motion was based on alleged discrepancies between

the sentencing hearing and the judgment entry. *State v. Isa*, 2d Dist. Champaign Nos. 2017-CA-5 and 2017-CA-20, 2017-Ohio-8335, ¶ 9 (*Isa IX and X*). Isa had also filed another motion in the trial court on March 8, 2017, seeking correction of an alleged clerical error in the sentence imposed in the judgment entry. *Id.* at ¶ 10. After Isa appealed from both judgments, we consolidated the appeals. *Id.* at ¶ 11.

{¶ 17} Concerning sentencing, we found the claim barred by res judicata but also concluded on the merits that any discrepancy was harmless. Our reasoning was that the sentences in question were imposed concurrently with another much longer sentence. Consequently, even though the sentences were not discussed during the sentencing hearing, they were imposed in the judgment entry, and the discrepancy had no effect. *Id.* at ¶ 15-22.

{¶ 18} We also rejected Isa's request for a nunc pro tunc sentencing entry removing the sentences, because such an entry is only appropriate for correcting clerical error. Using such a procedure to remove the sentences would not reflect the court's intent, which was to impose them. *Id.* at ¶ 24-26. Our decision was filed on October 27, 2017, and Isa did not appeal from it to the Supreme Court of Ohio.

{¶ 19} Around five-and-a-half years later, on April 3, 2023, Isa filed a motion in the trial court seeking leave to file a delayed motion for new trial. Isa alleged several grounds but only referenced ineffective assistance of trial counsel. These claims were that counsel acted ineffectively by failing to object to sentencing and by "lack of sufficient investigation into the request for DNA and his [presumably counsel's] lack of objections to his client." Motion for Leave to File a Motion for New Trial (Apr. 3, 2023), p. 3. No

affidavits were attached to the new trial motion.

{¶ 20} On April 17, 2023, Isa also filed an application for DNA testing. The application asserted that DNA evidence could have been used to discredit the victims' testimony, that Isa was denied the use of an interpreter at trial, and that his trial attorney was ineffective. Isa additionally alleged that no discovery was given by the prosecution to his attorney. As support for this latter statement, Isa attached an October 26, 2022 letter from the Champaign County Clerk of Courts. In response to a request from Isa, the clerk said, "No discovery was filed in your Case #2007CR207. The county Prosecutor is in possession of the discovery in your case, you will need to send a request to the Champaign County Prosecutor." DNA Application, Ex. A, p. 1.[1]

{¶ 21} On May 9, 2023, Isa filed an affidavit of indigency. He attached a May 8, 2023 letter to the clerk of courts in which he had sought to obtain records pertaining to his "court appointed attorney," Lori Reisinger (who was actually the assistant prosecuting attorney assigned to the case at the time of trial).

{¶ 22} Subsequently, on June 5, 2023, Isa filed an application with the federal district court seeking DNA testing. *See Isa v. Warden, London Corr. Inst.*, S.D.Ohio No.

---

[1] We interpret this statement to mean that no discovery had been filed with the clerk of courts, not that Isa's attorney failed to receive discovery from the prosecutor, as Isa suggests. The clerk was simply informing Isa that it did not have any materials and that he should ask the prosecutor. Filing discovery materials with the clerk would be very unusual. Selected "discovery" materials may be submitted to courts as exhibits, for example, during suppression hearings and trial. However, the record here contains no indication that any exhibits were identified or submitted during trial. This is not surprising, since the victims did not seek medical treatment, no DNA or other physical evidence was collected, and the trial essentially consisted of the testimony of the victims and Isa. *See* Voir Dire Transcript ("Trial 2 Tr."), 1-562 (three volumes of transcripts from the November 29, 2007 trial). A few officers testified about their investigation, but they did not refer to documents or other physical evidence.

3:23-CV-150, 2023 WL 5210538, *1 (July 20, 2023). On July 20, 2023, a magistrate recommended dismissal of the action due to Isa's failure to comply with a Deficiency Order that required him to either pay a $5.00 filing fee within 30 days or file a poverty affidavit. Isa was also required to refile the application on the court's official form. *Id.* The court subsequently adopted the magistrate's recommendation and dismissed the action without prejudice. *Isa v. Warden, London Corr. Inst.*, S.D.Ohio No. 3:23-CV-150, 2023 WL 5209513, *1 (Aug. 14, 2023).

{¶ 23} In the meantime, on June 6, 2023, Isa had filed another application for DNA testing in the trial court. The application was the same as the one previously submitted but included an affidavit explaining that delay in being able to present an "affirmative defense" was beyond Isa's control due to the delay in receiving the clerk's October 26, 2022 letter. Isa again referenced ineffective assistance of trial counsel and the fact that his request for a translator was not answered.

{¶ 24} On July 5, 2023, the trial court filed correspondence it had received from Lori Reisinger, who was by then a judge in the Champaign County Juvenile Court. The correspondence included Isa's June 24, 2023 letter to Reisinger making a public records request for all discovery in Isa's criminal case, and a June 21, 2023 letter from an assistant to the Champaign County Prosecutor. The prosecutor denied Isa's public records request pursuant to R.C. 149.43(B)(8).

{¶ 25} On July 24, 2023, the trial court denied Isa's application for DNA testing, the motion for leave to file a motion for new trial, and the public records request. Journal Entry Denying Defendant's Application for DNA Testing; Motion for Leave to File a

Delayed Motion for New Trial; and Request for Documents Under the Ohio Public Records Act (July 24, 2023) ("Journal Entry").   Isa then timely appealed pro so from the trial court's decision.


## II.   Discussion

**{¶ 26}** As a preliminary point, App.R. 16(A)(1)-(8) requires briefs to conform to certain standards.   Isa's brief does not comply with these requirements, including "[a] statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected."   App.R. 16(A)(3).   While Isa makes blanket statements like "First Issue at Trial," followed by "Prosecutorial Misconduct," this is not proper phrasing of assignments of error.   The brief is deficient in other ways as well. The law is well-established that "[l]itigants who choose to proceed pro se are presumed to know the law and correct procedure, and are held to the same standards as other litigants."   *Yocum v. Means*, 2d Dist. Darke No. 1576, 2002-Ohio-3803, ¶ 20, citing *Kilroy v. B.H. Lakeshore Co.*, 111 Ohio App.3d 357, 363, 676 N.E.2d 171 (8th Dist.1996).

**{¶ 27}** We are permitted to summarily strike a party's brief or dismiss the appeal for failure to comply with App.R. 16, but we can also review the matter in the interests of justice.   *E.g., State v. Bolton*, 2017-Ohio-8903, 100 N.E.3d 1275, ¶ 13 (2d. Dist.).   We will do so here.

**{¶ 28}** Isa's brief appears to raise two issues.   The first is prosecutorial misconduct, which, according to Isa, consisted of the following: (1) taking advantage of Isa's difficulty in speaking and understanding the English language; (2) leading witnesses

and scripting their testimony; (3) failing to investigate the allegations against Isa, including failing to check close-circuit television cameras at his business; and (4) eliciting hearsay testimony that the defense failed to challenge.   Appellant's Brief, p. 1-3.

{¶ 29} The second issue involves ineffective assistance of trial counsel.   In this regard, Isa contends that trial counsel acted ineffectively in the following ways: (1) failing to arrange for a translator; and (2) failing to conduct basic investigation, including: (a) reviewing the business camera footage, which allegedly would have shown that no misconduct occurred; (b) pulling employment records; and (c) interviewing or calling witnesses.   *Id.* at p. 3-6.

{¶ 30} "The doctrine of res judicata bars someone from raising a claim that could have been raised and litigated in a prior proceeding."   *State v. Blanton*, 171 Ohio St.3d 19, 2022-Ohio-3985, 215 N.E.3d 467, ¶ 2, citing *State v. Perry*, 10 Ohio St.2d 175, 180, 226 N.E.2d 104 (1967).   Consequently, courts will not consider claims that could have been decided on direct appeal.   *Id.*   An exception exists, where "either (1) the petitioner had the same attorney at trial and on appeal or (2) he must rely on evidence outside the trial record to establish his claim for relief. * * * The converse is that when the petitioner had a new attorney on appeal and the claim could have been litigated based on the trial record, res judicata applies and the postconviction claim is barred."   *Id.*, citing *State v. Cole*, 2 Ohio St.3d 112, 113-114, 443 N.E.2d 169 (1982).

{¶ 31} The record here indicates that Isa's counsel for his trial and his direct appeal were different.   *See Isa I,* 2d Dist. Champaign No. 2007-CA-37, 2008-Ohio-5906.   More importantly, as the factual background reveals, the issues being raised have been

litigated many times previously during various post-conviction proceedings. Isa is also raising matters that occurred at trial and could have been raised on direct appeal. In the rare situation where Isa has alleged something that could be outside the record, like counsel's failure to review security camera footage, Isa has offered no affidavits, documents, or evidence that was outside the trial court record to support any of his claims. Therefore, res judicata applies, and Isa is precluded from again raising prosecutorial misconduct or ineffective assistance of trial counsel based on matters that occurred during trial.

{¶ 32} Furthermore, Isa has failed on appeal to address the issues the trial court actually did decide: the motion for leave to file a delayed new trial motion; the DNA testing application; and the public records request. Isa does mention the application and new trial motion in passing but offers no argument about these matters.

{¶ 33} Under App.R. 12(A), we "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." Nonetheless, we may choose to consider the error or to consider plain error. *E.g., Rose v. Cochran*, 2d Dist. Montgomery No. 25498, 2013-Ohio-3755, ¶ 5 (employing plain error doctrine); *State v. Huelsman*, 2d Dist. Miami No. 2022-CA-21, 2023-Ohio-649, ¶ 8 (considering error that was not properly alleged); *State v. Lauharn*, 2d Dist. Miami No. 2010-CA-35, 2011-Ohio-4292, ¶ 7 (addressing error briefly). We note the State made no attempt in its brief to address anything other than the prosecutorial misconduct and ineffective assistance of counsel issues.

A. New Trial

{¶ 34} Crim.R. 33(A) allows new trials to be granted on various grounds. As relevant here, Isa alleged the following grounds: "Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial"; "Misconduct of the jury, prosecuting attorney, or the witnesses for the state"; "Accident or surprise which ordinary prudence could not have guarded against"; "The judgment is contrary to law"; and "Newly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial." Motion for Leave to File a Delayed Motion for New Trial (Apr. 3, 2023), p. 3. These correspond to the grounds listed in Crim.R. 33(A)(1), (2), (3), (4), and (6).

{¶ 35} Crim.R. 33(B) provides time limits within such motions must be filed. Clearly those limits had expired here; the trial ended in November 2007. Isa has also filed such new trial motions before and they have been rejected. *See Isa V*, 2d Dist. Champaign No. 2013-CA-20, 2014-Ohio-139; *Isa VII*, 2d Dist. Champaign No. 2015-CA-35, 2016-Ohio-4979.

{¶ 36} "A trial court's decision on a Crim.R. 33 motion for a new trial will not be reversed absent an abuse of discretion." *State v. Gillispie*, 2d Dist. Montgomery No. 24456, 2012-Ohio-1656, ¶ 31, citing *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990), paragraph one of the syllabus; *State v. Matthews*, 81 Ohio St.3d 375, 378, 691 N.E.2d 1041 (1998). " 'Abuse of discretion' has been defined as an attitude that is

unreasonable, arbitrary or unconscionable." (Citation omitted.) *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Usually, abuse of discretion involves decisions that are based on unsound reasoning rather than being capricious or arbitrary. *Id.*

{¶ 37} "In order to file a motion for new trial after the expiration of the time periods specified in Crim.R. 33(B), a defendant must first seek leave of the trial court to file a delayed motion." *State v. DeVaughns*, 2018-Ohio-1421, 110 N.E.3d 922, ¶ 18 (2d Dist.). (Other citations omitted.) " 'To obtain leave, defendant must demonstrate by clear and convincing evidence that he or she was unavoidably prevented from timely filing the motion for a new trial or discovering the new evidence within the time period provided by Crim.R. 33(B).' " *Id.*, quoting *State v. Warwick*, 2d Dist. Champaign No. 2001-CA-33, 2002 WL 1585663, *2 (July 19, 2002). " '[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence.' " *State v. Parker*, 178 Ohio App.3d 574, 2008-Ohio-5178, 899 N.E.2d 183, ¶ 16 (2d Dist.), quoting *State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859 (10th Dist.1984).

{¶ 38} The trial court rejected Isa's new trial motion because Isa failed to explain why he previously could not have raised the matters that were asserted in the motion. Judgment Entry at p. 7. Having reviewed the record, we agree. Accordingly, the trial court did not abuse its discretion in denying Isa's motion.

B. Application for DNA Testing

**{¶ 39}** The fact that no DNA test was performed before or during the initial trial proceedings is undisputed. In this situation, R.C. 2953.74(B) provides that "the court may accept the application only if:"

(1) The offender did not have a DNA test taken at the trial stage in the case in which the offender was convicted of the offense for which the offender is an eligible offender and is requesting the DNA testing regarding the same biological evidence that the offender seeks to have tested, the offender shows that DNA exclusion when analyzed in the context of and upon consideration of all available admissible evidence related to the subject offender's case as described in division (D) of this section would have been outcome determinative at that trial stage in that case, and, at the time of the trial stage in that case, DNA testing was not generally accepted, the results of DNA testing were not generally admissible in evidence, or DNA testing was not yet available.

**{¶ 40}** " 'Outcome determinative' means that 'there is a strong probability that no reasonable factfinder would have found the offender guilty of [the] offense' for which he or she was convicted if the DNA results had been presented and found relevant and admissible at trial and 'had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the offender's case.' " *State v. Scott*, 171 Ohio St.3d 651, 2022-Ohio-4277, 220 N.E.3d 668, ¶ 7, quoting R.C.

2953.71(L). In deciding if the outcome-determinative requirement has been satisfied, trial courts " 'shall consider all available admissible evidence related to the subject offender's case.' " *Id.*, quoting R.C. 2953.74(D).

{¶ 41} Further restrictions are that trial courts "may 'accept' an eligible inmate's application for DNA testing only if the following factors are present: (1) biological material was collected from the crime scene or the victim(s), and the parent sample of that biological material still exists; ( 2) the parent sample of the biological material is sufficient, demonstrably uncorrupted, and scientifically suitable for testing; (3) the identity of the perpetrator of the charged offense was an issue at the inmate's trial; (4) a defense theory at trial was such that it would permit a conclusion that an 'exclusion result will be outcome determinative'; and (5) 'if DNA testing is conducted and an exclusion result is obtained, the results of the testing would be outcome determinative.' " *State v. Emerick*, 170 Ohio App.3d 647, 2007-Ohio-1334, 868 N.E.2d 742, ¶ 15 (2d Dist.), referencing R.C. 2953.74(B) and (C). If any one of these factors does not exist, the court cannot grant the application. *Id.* at ¶ 16. *Accord State v. Warren*, 2022-Ohio-4743, 203 N.E.3d 903, ¶ 12 (2d Dist.).

{¶ 42} Decisions whether to accept DNA applications are within a court's discretion. Therefore, review is for abuse of discretion. *Scott* at ¶ 10.

{¶ 43} In rejecting the application, the trial court found that Isa had failed to establish any of the factors in R.C. 2953.74(B)(1). Journal Entry at p. 3. In addition, the court found that R.C. 2953.74(C)(3) was not satisfied because the identity of the perpetrator had not been at issue at trial. Specifically, five victims testified as to Isa's

sexual contact, and they did not identify any piece of clothing they were wearing at the time of the incidents. *Id.* at p. 4. Isa also did not claim at trial that another individual was responsible; instead, he denied having sexual contact with the victims. *Id.* Having reviewed the evidence in the record, we agree with the trial court and find no abuse of discretion.

{¶ 44} In Isa's first jury trial (at which his motion for a mistrial was granted), there was no claim that someone else committed the alleged crimes. *See* Transcript of Trial Proceedings (Trial 1), 22-24 (defense's opening statement) and 154 (Isa stated to police that the allegations "were all lies"). During the second jury trial, which convened a few weeks later, Isa did not claim that other persons were responsible; instead, he asserted there was no physical evidence and there were no witnesses to the alleged crimes. Isa also denied having committed the crimes. Trial 2 Tr. at 20-23 (defense's opening statement); 209 (Isa denied all allegations to the police); 214 (victims did not tell police there were any witnesses); 461, 464-465, 482, 492, and 494 (Isa's testimony denying all allegations of sexual contact); and 524 (defense's closing argument). In view of these facts, the trial court correctly found that the issue at trial was not the perpetrator's identity. This was fatal to the application. Accordingly, the court did not abuse its discretion in denying Isa's application for DNA testing.

## C.   Public Records Request

{¶ 45} As indicated, the Champaign County Prosecutor denied Isa's request for records of all discovery in the case. The trial court also denied Isa's request, concluding

that Isa had failed to show he needed the requested documents to support a justiciable claim. Journal Entry at 8. The court further stressed that Isa had failed to identify a pending proceeding to which the records would be material and that Isa had failed to show the records were material to his DNA application or to his motion for leave to file a motion for new trial. *Id.*

{¶ 46} R.C. 149.43 outlines procedures for obtaining public records. In this regard, R.C. 149.43(B)(1) provides: "Upon request by any person and subject to division (B)(8) of this section, all public records responsive to the request shall be promptly prepared and made available for inspection to the requester at all reasonable times during regular business hours." In turn, division (B)(8) states that:

A public office or person responsible for public records is not required to permit a person who is incarcerated pursuant to a criminal conviction or a juvenile adjudication to inspect or to obtain a copy of any public record concerning a criminal investigation or prosecution or concerning what would be a criminal investigation or prosecution if the subject of the investigation or prosecution were an adult, unless the request to inspect or to obtain a copy of the record is for the purpose of acquiring information that is subject to release as a public record under this section and the judge who imposed the sentence or made the adjudication with respect to the person, or the judge's successor in office, finds that the information sought in the public record is necessary to support what appears to be a justiciable claim of the person.

{¶ 47} The Supreme Court of Ohio has characterized the language in R.C. 149.43(B)(8) as " 'broad and encompassing.' " *State ex rel. Ware v. Giavasis*, 160 Ohio St.3d 383, 2020-Ohio-3700, 157 N.E.3d 710, ¶ 6, quoting *State ex rel. Russell v. Thornton*, 111 Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, ¶ 14. This part of the statute also " 'clearly sets forth heightened requirements for *inmates* seeking public records.' " (Emphasis sic.) *State ex rel. Ellis v. Cleveland Police Forensic Laboratory*, 157 Ohio St.3d 483, 2019-Ohio-4201, 137 N.E.3d 1171, ¶ 9, quoting *Russell* at ¶ 14.

{¶ 48} Trial court decisions under R.C. 149.43(B)(8) are reviewed for abuse of discretion. *E.g., State v. Stinson*, 2d Dist. Montgomery No. 28073, 2019-Ohio-401, ¶ 8. No abuse of discretion occurred here.

{¶ 49} We have held that "[c]laims barred by res judicata are not justiciable." *State v. Reid*, 2d Dist. Montgomery No. 24672, 2012-Ohio-1659, ¶ 9. That would apply to Isa's attempt to file a new trial motion, which was barred by res judicata. We did remark in *Reid* that res judicata would not apply to claims based on discovery of new evidence. *Id.* at ¶ 10, citing *State v. Davis*, 131 Ohio St.3d 1, 2011-Ohio-5028, 959 N.E.2d 516. However, for the reasons we have mentioned, this ground was not established; Isa offered nothing to show either that new evidence existed or that he had been prevented from discovering it.

{¶ 50} Furthermore, while the application for DNA testing was not barred by res judicata, Isa failed to indicate in the trial court why trial discovery materials would assist in that proceeding. In fact, he made no specific argument at all.

{¶ 51} Based on the preceding discussion, Isa's purported assignments of error

are overruled.

## III.   Conclusion

{¶ 52} All of Isa's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .


EPLEY, P.J. and TUCKER, J., concur.